## McNEIL–PPC, INC., Petitioner,

v.

## COMMONWEALTH of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 10, 2002.
Decided June 28, 2002.

Kyle O. Sollie and Lee A. Zoeller, Philadelphia, for petitioner.

Ronald H. Skubecz, Harrisburg, for respondent.

Before: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, and SIMPSON, Judge.

OPINION BY Judge COHN.

The parties are before the Court on exceptions[1] filed by McNeil–PPC, Inc. (McNeil) to the memorandum opinion and order entered on June 28, 2001, by a panel of this Court which upheld the decision of the Board of Finance and Revenue (Board) not to reduce the assessment of McNeil's sales and use tax liability.

The parties have stipulated to the relevant facts of the case pursuant to Pa. R.A.P. 1571(f). *Cooper v. Commonwealth*, 700 A.2d 553 (Pa.Cmwlth.1997). McNeil, a New Jersey corporation with its principal place of business in Fort Washington, Pennsylvania, is a pharmaceutical company that manufactures and markets analgesic drugs such as Tylenol. On November 9, 1994, the Department of Revenue (Department or Commonwealth) advised McNeil that it intended to conduct a sales and use tax[2] (tax) audit of McNeil's records and

---

1. Exceptions have been filed pursuant to Pa. R.A.P. 1571(i).

2. A "sales tax" is imposed on a sale at retail of tangible personal property and certain services; a "use tax" is imposed on the use of such items and services purchased at retail and where sales tax has not been paid. The taxes are usually collected by a vendor from the purchaser and paid over to the Commonwealth. *See* Section 202 of the Tax Reform

accounts for purchases McNeil made between October 1, 1991 and December 31, 1994, to determine the amount of tax due for that period.[3] McNeil made approximately 780,000 purchases related to its pharmaceutical business during the period in question, and all were included by the auditor in his calculations to determine the amount of tax due. Stipulation of Facts (S/F) no. 8. At the beginning of the audit, the Department's auditor advised McNeil's representative that any tax McNeil paid on non-taxable purchases during the audit period would reduce any tax determined by the auditor to be due for the audit period.[4]

During the audit period, McNeil paid $1,599,975.99 of use tax directly to the Commonwealth for the purpose of stopping the running of interest. S/F no. 9, 10. McNeil intended this amount be applied to an anticipated sales and use tax deficiency which McNeil believed would be revealed by the Department's audit. *Id.* On June 25, 1996, at the conclusion of the audit, the Department mailed McNeil an assessment notice for $1,933,278.78: it reached this figure by taking the total use tax due for the audit period of $3,533,254.77, less McNeil's anticipated use tax payment of $1,599,975.99. However, the auditor was not aware of and did not reduce his determination of the amount of tax due for this same period by sales tax that was paid by McNeil to vendors on non-taxable purchases.[5] S/F no. 11.

On August 9, 1996, McNeil filed a petition for reassessment with the Department's Board of Appeals, challenging the entire amount of tax the auditor determined was due for the audit period. The Board of Appeals, also taking into account McNeil's anticipated use tax payment, reassessed McNeil's tax liability for the audit period, reducing it to $1,889,799.74.[6]

On October 6, 1997, McNeil appealed this assessment by filing a petition for review with the Board again contesting the entire use tax assessment determined to be due.[7] Subsequently, McNeil submitted evidence to the Board that it had also paid *sales* tax directly to vendors on non-tax-

Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7202(a) and (b); 26 Summ. Pa. Jur.2d § 7:2.

3. "Extensive detailed records of *all* purchases are maintained by McNeil in conformance with the record keeping requirements of Section 271 of the Tax Reform Code of 1971 ("Code") and Sales and Use Tax Regulation Section 34.2 promulgated thereunder." S/F no. 4 (emphasis added). The tax audit was performed pursuant to Section 272 of the Tax Code, 72 P.S. § 7272; *see also* 61 Pa.Code § 35.1.

4. S/F no. 5. McNeil makes no allegations that it relied on the auditor's comments. However, even if such allegations were made, the doctrine of equitable estoppel would not apply in this case as there simply is no evidence that McNeil was intentionally misled or induced to change its position in any way. *See Orsato–Guenon, Inc. v. Commonwealth,* 665 A.2d 520 (Pa.Cmwlth.1995).

5. Generally, the tax is collected by a vendor from the purchaser. 72 P.S. §§ 7237(b)(1) and 7202(a) and (b). Vendors who collect sales tax in the Commonwealth are licensed to do so and act as agents of the Commonwealth. *Silberman v. Commonwealth,* 738 A.2d 508, 509 (Pa.Cmwlth.1999). When a purchaser pays sales tax to a vendor, by paying the Commonwealth's agent, he has paid the Commonwealth. *Id.* In some situations, however, the purchaser can pay the tax directly to the Commonwealth. *See* Section 237 of the Tax Code, 72 P.S. § 7237.

6. The Board of Appeals notified McNeil that it was issuing a reassessment for the audit period for $3,489,775.73. Deducting McNeil's anticipatory use tax payment from this new figure, the resulting tax liability becomes $1,889,799.74.

7. *See* Section 234 of the Tax Code, 72 P.S. § 7234.

able purchases during the audit period.[8] Based on this evidence, on November 12, 1997, McNeil amended its appeal to request that such sales tax overpayments also be used to reduce the amount of tax owed for the audit period.[9] However, the Board rejected McNeil's request as untimely citing the former version of the three-year statutory limitation period for refund petitions then in effect.[10] In its decision and order dated March 25, 1998, the Board further reduced McNeil's tax liability to be $965,538.44;[11] it reached this figure by taking the tax amount it now determined was due for the audit period, $2,565,514.13, less McNeil's anticipated *use* tax payment of $1,599,975.99 only. The Board thus gave no offsetting credit for McNeil's sales tax claim against the reassessed tax due for the audit period.

Consequently, on April 21, 1998, McNeil filed a petition for review of the Board's decision with the Commonwealth Court.[12] On June 4, 2001, McNeil argued before a panel of the Court that the Board should have allowed a credit for sales tax paid even if the claim was not filed within the required statutory time period. It reasoned that the audit statute[13] and the assessment regulation[14] both require the Board to determine the proper amount of tax due, which could not be accomplished if any tax paid on non-taxable purchases was ignored.[15] The Commonwealth countered

8. The overpayment of sales tax paid to vendors did not become evident through the audit process, S/F no. 11, because it is not reported on McNeil's tax return. Brief for Commonwealth, p. 12. It was McNeil who was aware of these overpayments and brought them to the Board's attention.

   The submitted evidence was primarily related to the manufacturing exclusion and marketing-related exclusions and exemptions from tax. *See* Section 201(k)(8) of the Tax Code, 72 P.S. § 7201(k)(8).

9. McNeil did not submit a petition for refund as required by Section 253(a) of the Tax Code, 72 P.S. § 7253(a).

10. *See* sections 253 and 3003.1 of the Tax Code, 72 P.S. §§ 7253 and 10003.1, in effect prior to their amendment in 1997. For a subsequent statutory history see footnote 16.

11. The actual amount should be $965,538.*14*.

12. *See* Section 235 of the Tax Code, 72 P.S. § 7235; Pa. R.A.P. 1571.

13. 72 P.S. § 7231(b) provides:
    If the department determines that any return or returns of any taxpayer understates the amount of tax due, it shall determine the proper amount and shall ascertain the difference between the amount of tax shown in the return and the amount determined, such difference being hereafter sometimes referred to as the "deficiency."

14. 61 Pa.Code § 35.1(a)(1) provides:
    The Department, by its authorized agents, has the power to enter upon the premises of a taxpayer . . . for the purpose of making inspections . . . to ascertain and assess tax imposed by the act.

15. McNeil claims that the Sales Tax Board has permitted the same credits that it now seeks, and cites two Tax Board cases to that effect. However, both cases can be differentiated from the case at bar, and were decided about forty years ago, thus pre-dating the Tax Reform Code of 1971.

    In *Petition of Carroll Motor*, Sales Tax Board of Review, Case No. A–004111, July 18, 1958, petitioner *timely appealed* a notice of assessment of understatement of tax. *Only one line item* (parts and accessories) was deficient for the audit period. In correcting for the deficiency, the auditor was found to have applied a test period rate to this line item in an arbitrary manner, and the Tax Board reduced petitioner's assessment from $34.38 to $19.62.

    In *Petition of Herre Brothers, Inc.*, Sales Tax Board, Docket No. 3362, September 12, 1962, the audit established a tax deficiency based upon petitioner's failure to pay tax on certain transactions which were taxable. Petitioner *timely filed* a petition for refund, and its $101.00 overpayment was used to reduce petitioner's $200.96 tax liability. The Board also gave petitioner "an equitable right to plead" a recoupment claim *for taxes of the*

that the three-year statutory period for filing a request for sales tax credit was mandatory; thus, no credit could be considered because the claim was not timely filed. In a memorandum opinion filed on June 28, 2001, this Court entered judgment for the Commonwealth. McNeil filed exceptions to the Court's opinion, and the case is again before the Court for disposition.

■ This Court has the broadest discretion when reviewing a decision of the Board because, although brought within our appellate jurisdiction, we review the case *de novo*. *Hilltop Properties Associates Limited Partnership v. Commonwealth*, 768 A.2d 1189 (Pa.Cmwlth.2001); *G.L. Marks Contracting, Inc. v. Commonwealth*, 712 A.2d 816 (Pa.Cmwlth.1998), *affirmed per curiam*, 555 Pa. 559, 725 A.2d 756 (1999).

Our Supreme Court has noted that statutory limitations periods, particularly in tax cases, are absolute conditions to the right to obtain relief and are necessary to avoid great uncertainty in the budgetary planning and fiscal affairs of the Commonwealth. *Federal Deposit Insurance Corporation v. Board of Finance and Revenue*, 368 Pa. 463, 469–70, 84 A.2d 495, 498–99 (1951), *cited with approval in Silberman v. Commonwealth*, 738 A.2d 508 (Pa. Cmwlth.1999). *See also Davis v. Commonwealth*, 719 A.2d 1121 (Pa.Cmwlth. 1998); *Biro v. Commonwealth*, 707 A.2d 1205 (Pa.Cmwlth.1998); *Cooper.*

■ When the audit of McNeil's sales and use tax records was in process, between October 1991 and December 1994, pertinent sections of the Tax Code required affirmative action on the part of the taxpayer within a specified time period in order for the taxpayer to receive a refund

or credit. Section 252 of the Tax Code authorized a refund as follows:

> The department shall, *pursuant to the provisions of sections 253* and 254, refund all taxes . . . paid to the Commonwealth under the provisions of this article and to which the Commonwealth is not rightfully entitled.

72 P.S. § 7252 (emphasis added) (footnote omitted). However, at that time, section 253 of the Tax Code stated. in pertinent part:

> [T]he refund *or credit of tax*, interest or penalty provided for by section 252 shall be made *only where* the person who has actually paid the tax *files a petition for refund* with the department *within three years of the actual payment of the tax to the Commonwealth.*

72 P.S. § 7253(a) (emphasis added) (footnote omitted).

■ Thus, for the relevant times in question, the Department did not have statutory authority to grant McNeil a credit for sales tax paid to third party vendors. The only remedy available to obtain a credit for overpayment of sales tax paid during the audit period was for McNeil to file a petition for refund within three years of the actual payment of the tax. Since McNeil made the sales tax overpayments during the audit period, it was required to file said petition within three years of payment of tax. To date, McNeil has not filed such a petition. S/F no. 16. Therefore, McNeil failed to comply with the statutory requirements and time limitations in place at the time in question, and there are no means by which to grant a credit for its sales tax overpayment. "[E]quitable principles cannot vary the statutory requirements and this Court *lacks the power* to alter the explicit lan-

*same type* which petitioner erroneously computed and paid during the audit period.

guage of the statute." *Davis*, 719 A.2d at 1122 (emphasis added).[16]

McNeil should have been sufficiently familiar with statutory requirements to know that it had to file a petition for a refund of its sales tax overpayments within the appropriate time period. It has been the subject of a sales and use tax audit for every year that it has operated within Pennsylvania, S/F no. 3, and was able to successfully obtain a credit for use tax overpayments in this case. S/F nos. 10, 13, 17.

In addition, although the outcome appears harsh, McNeil's sales and use tax liability has actually gone from an initial $3,533,254.77 due and owing, to a credit balance in McNeil's favor of $34,461.56. S/F nos. 10, 19.

Accordingly, McNeil's exceptions to the Court's Order of June 28, 2001, are denied.[17]

Judge LEADBETTER dissents.

### ORDER

**NOW,** June 28, 2002, the exceptions to the Court's Memorandum Opinion and Order of June 28, 2001, are denied.

---

16. While we are sympathetic to McNeil's predicament, we note that the previously burdensome effect of section 253(a) has been lessened by numerous amendments made to pertinent sections of the Tax Code. However, pursuant to Section 36(d) of the Act of May 7, 1997, P.L. 85, such amendments apply to payments made *on or after* January 1, 1998. As such, none of the sections as amended apply to McNeil's case.

Amended section 253(a) now reads:
... [T]he refund or credit of tax, interest or penalty provided for by section 252 shall be made only where the person who has actually paid the tax files a petition for refund with the department **under section 3003.1.** 72 P.S. § 7253(a) (emphasis added). The 1997 amendment deleted the phrase "within three years of the actual payment of tax to the Commonwealth," and now directs the reader to section 3003.1.
The 1997 amendment rewrote section 3003.1, which formerly read:
When any tax or other money has been paid to the Commonwealth under a provision of this act or any other statute subsequently held by final judgment of a court of competent jurisdiction to be unconstitutional or under an interpretation of such provision subsequently held by such court to be erroneous, a petition for refund may be filed with the Board of Finance and Revenue either prior or subsequent to such final judgment but must be filed within three years of the payment of which a refund is requested, or within three years of the settlement of such taxes or other moneys due the Commonwealth, whichever period last expires....
72 P.S. § 10003.1. This section in essence became 3003.1(c) of the amended Tax Code of 1997. The three-year statute of limitations for filing a petition for refund which had been included in section 253(a) was thus maintained in section 3003.1(c). However, pursuant to new section 3003.1(b), *the Department now has the authority to act on its own and may grant a refund or credit without taxpayer submission of a petition for refund.* Section 3003.1(b) states:
The department may grant a refund or credit to a taxpayer for all tax periods covered by a departmental audit. If a credit is not granted by the department in the audit report, the taxpayer must file a petition for refund within six months of the mailing date of the notice of assessment, determination or settlement.
72 P.S. § 10003.1(b).

17. We do not address McNeil's exceptions concerning the Board's alleged violations of the Uniformity Clause of the Pennsylvania Constitution and equal protection under the Fourteenth Amendment to the United States Constitution because we have determined that McNeil failed to file a timely appeal from the overpayment of the sales tax.